UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

        Plaintiff,	Case No. 15-cr-20136
        	Hon. Denise Page Hood

v.

Leonard Maurice Irvin,

        Defendant.
_____/

**ORDER DENYING DEFENDANT'S MOTIONS TO SUPPRESS EVIDENCE (Docket No. 11); SUPPRESS STATEMENTS BY DEFENDANT (Docket No. 14); AND REVOCATION OF DETENTION ORDER (Docket No. 15)**

## I. INTRODUCTION

Defendant Leonard Maurice Irvin filed a Motion to Suppress of Evidence **[Docket No. 11, filed April 8, 2015]**. The Government filed a Response opposing the Motion **[Docket No. 22, filed April 29, 2015]**. Defendant also filed an Amended Motion to Suppress Statements of Defendant **[Docket No. 14, filed April 8, 2015]**. The Government filed a Response opposing the Motion **[Docket No. 23, filed April 29, 2015]**. Also before the Court is Defendant's Motion for Revocation of the Detention Order **[Docket No. 15, filed April 7, 2015]** to which the Government responded **[Docket No. 17, filed April 17, 2015]**.

1

## II.     BACKGROUND

On December 9, 2014, Redford Township police responded to a report of a shooting at the Hilltop Motel.  The victim identified Defendant in a line-up as the man that shot her and took her money.   Surveillance video from the motel showed a black male get out of a maroon Chevrolet Suburban with a silver gas cap and a small white sticker in the back window, walk to the motel, and return to the car about 10 minutes later to leave.  A cell phone that belonged to the victim showed four incoming calls from and two outgoing calls to a specific number around the time the car arrived at the motel parking lot.  The number was determined to be associated with a woman who lives on Lamphere Street and that Defendant's name was associated with the same address.  The search also revealed that Defendant owns a 2007 Chevrolet K1500.  The vehicle's registration revealed two Ohio Street addresses.  Additional databases confirmed that Defendant had used those two addresses.

On December 10, 2014, officers executed search warrants at the Ohio Street addresses.  At 12324 Ohio Street, officers found digital scales, baggies, razor blades, marijuana, hydrocodone, vicodin, heroin, cocaine, cash, and several firearms.  At 12315 Ohio Street, officers found a loaded Charter Arms .38 shot revolver, which matched the victim's description of the handgun.  The officers

arrested Defendant the same day. At the Redford Township police station, Detective James Meade read Defendant his *Miranda* rights and notified Defendant that an attorney was inquiring about him. Defendant indicated he still wanted to speak to Detective Meade and signed a *Miranda* waiver. Although Defendant made incriminating statements, he denied being involved in the shooting at the motel.

On January 6, 2015, during a preliminary exam at Redford District court, the victim testified that Defendant was the person who shot her. At the end of the cross-examination, she recanted her identification of the Defendant.

A federal indictment was issued on March 10, 2015, charging Defendant with two counts of Possession with Intent to Distribute Controlled Substances, 21 U.S.C. § 841(a) (Counts One and Two), Felon in Possession of Firearms, 18 U.S.C. § 922(g)(1) (Count Three), Possession of a Firearm in Furtherance of a Drug Trafficking Crime, 18 U.S.C. § 924(c) (Count Four), and Possession of a Stolen Firearm, 18 U.S.C. § 922(j) (Count Five). The Indictment alleges that Defendant possessed cocaine and heroin with the intent to distribute, and possessed four firearms that were used to further his drug trafficking activities. One of the firearms was alleged to be stolen.

## III.   ANALYSIS

### A. Motion to Suppress Evidence

In his Motion for Suppression of Evidence [**Docket No. 11, filed April 8, 2015**], Irvin argues that Detective Meade's Affidavit in support of the search warrant fails to establish a fair probability that contraband or evidence of the motel shooting would have been found at the Ohio Street addresses. Therefore, the Redford Township district judge did not have a substantial basis to conclude a search of the Ohio Street addresses would uncover evidence of wrongdoing. Defendant also claims the affidavit in support of the warrant failed to establish a nexus between the Ohio Street addresses and the items sought.

Absent an exception, the Fourth Amendment requires officers to obtain a warrant that is supported by probable cause prior to conducting a search. United States v. Smith, 510 F.3d 641, 647 (6th Cir. 2007). A magistrate judge's determination of probable cause should be paid great deference by a reviewing court. *United States v. Allen,* 211 F.3d 970, 973 (6th Cir. 2000)(en banc). Courts should review the sufficiency of an affidavit in a commonsense, rather than hyper technical manner, and rely on a "totality of the circumstances" determination, rather than "line-by-line scrutiny." *United States v. Greene,* 250 F.3d 471, 479 (6th Cir. 2001). When evaluating the sufficiency of the evidence supporting probable cause, the Court is limited to the information presented in the four-corners of the

affidavit and it cannot consider any other testimony. *United States v. Frazier,* 423 F.3d 526, 531 (6th Cir. 2005). To justify a search, the circumstances must indicate why evidence of illegal activity will be found "in a particular place." *United States v. Carpenter,* 360 F.3d 591, 594 (6th Cir. 2004) There must be a "nexus between the place to be searched and the evidence sought." *Id.*

If an affidavit is found to be defective, the evidence may still be admitted pursuant to the good faith exception to the warrant requirement established by *United States v. Leon,* 468 U.S. 897, 905 (1984).The good faith inquiry is to be made objectively and the following exceptions to the good faith inquiry may be considered: 1) the supporting affidavit contained knowing or reckless falsity; 2) the issuing magistrate wholly abandoned his or her judicial role; 3) the affidavit is so lacking in probable cause to render official belief in its existence entirely unreasonable; or 4) the officer's reliance on the warrant was neither in good faith nor objectively reasonable. *Id.* at 923.

A defendant challenging the validity of an affidavit supporting a search warrant has a substantial burden to overcome before an evidentiary hearing is required. *Franks v. Delaware,* 438 U.S. 154, 171-72 (1978). Allegations of negligence or innocent mistake are insufficient. *Id.* There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations

must be accompanied by an offer of proof and must point out specifically the portion of the warrant affidavit that is claimed to be false. *Id.*

In the Affidavit, Detective Meade provides several facts that connect Defendant to the shooting. First, the affidavit explains that the victim's cell phone recovered at the scene of the shooting received four incoming calls from a number and made two outgoing calls to that same number - all within half an hour before the shooting. The phone number was traced to an address associated with Irvin. Further research on Irvin revealed that he owned a Cheverlot 4x4- the same type of car as the car identified in the hotel video. The Cheverlot 4x4 was registered to the Ohio Street address. When Detective Mead drove by the Ohio Street address a Cheverlot Suburban matching the vehicle depicted in the hotel surveillance video was parked in the driveway. And, the victim of the shooting selected Irvin out of a photo line-up.

The affidavit contained all of this information, and it instructed police officers to look for items related to the shooting. The affidavit sought permission to search for blood, hair, bodily fluid, handguns and ammunition, cell phones, clothing, cash, residency documents, and the Cheverlot Suburban.  Considering, the cell phone number connected to the Defendant, the matching vehicle description, Defendant's connection to the Ohio Street residences, and the victim's

identification of the Defendant, there was probable cause to believe the items sought would be located at the properties. The affidavit created a nexus between the Ohio Street addresses and the evidence sought.

Accordingly, Irvin's motion to suppress the evidence is denied and the Court also denies his request for a *Franks* hearing.

### B. Motion to Suppress Statements by Defendant

In his Amended Motion to Suppress Statements **[Docket No. 14, filed April 8, 2015]**, Irvin argues his statements should be suppressed because Detective Meade violated Irvin's Fifth Amendment right to counsel by interviewing Irvin after his lawyer contacted Detective Meade to notify him that Defendant was represented by counsel. Irvin also says that the questions asked during the interview were designed to elicit specific answers.

The Fifth Amendment provides that "[n]o person shall be ... compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. In *Miranda*, the Supreme Court established certain procedural safeguards to be employed in the context of a custodial interrogation. *Miranda v. Arizona*, 364 U.S. 426, 444 (1966). These safeguards include informing a suspect that he "has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford

an attorney one will be appointed for him prior to questioning if he so desires", or giving other equivalent warnings. *Id*. at 479. These procedural safeguards are required when a suspect is in custody and subjected to interrogation. *Rhode Island v. Innis*, 446 U.S. 291, 300 (1980).

According to the Supreme Court, interrogation warranting Miranda safeguards, requires "a measure of compulsion above and beyond that inherent in custody itself." Id. at 300. Interrogation refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. Id. at 300-01.

The Fifth Amendment privilege against self-incrimination is a personal privilege to the witness and not the property of his attorney. *Young v. United States*, No. 2:06-CR-20(4), 2014 WL 1491208, at *17 (E.D. Tenn. Apr. 15, 2014). A suspect must unambiguously invoke his right to counsel. *Davis v. United States*, 512 U.S. 452, 459 (1994); *Berghuis v. Thompkins*, 560 U.S. 370, 381 (2010).

A defendant's statement must be "made freely, voluntarily and without compulsion or inducement of any sort." *Haynes v. Washington,* 373 U.S. 503, 513 (quoting *Wilson v. United States,* 162 U.S. 613, 623 (1986)). In *Rhode Island v. Innis*, 446 U.S. 291 (1980), the Supreme Court defined "interrogation" as referring

8

"not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id.* at 301. "[I]nterrogation, as conceptualized in the *Miranda* opinion, must reflect a measure of compulsion above and beyond that inherent in custody itself." *Id.* at 300.

When evaluating the voluntariness of a confession, the court must first determine whether the confession was extorted by objectively coercive police activity. *See United States v. Newman*, 889 F.2d 88, 95 (6th Cir. 1989)(citing *McCall v. Dutton*, 863 F.2d 454 (6th Cir. 1988)). If the accused cannot show objective coercion by the officers, the court must stop its since "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary.'" *Newman*, 889 F.2d at 95. If the court determines there was objectively coercive police activity, the court must further determine whether the coercion was sufficient, considering the subjective state of mind of the defendant, to have overborne his will. Finally, the court must conclude that the defendant's will was overborne as a result of the coercive police activity. *Id.*

To determine whether the defendant's will was overborne, a court should consider the totality of the circumstances. *Ledbetter v. Edwards*, 35 F.3d 1062,

1067 (6th Cir. 1994). When evaluating the totality of the circumstances the court should consider:1) the age, education, and intelligence of the defendant; 2) whether the defendant was informed of his constitutional rights; 3) the length of the interrogation; 4) whether the question was repeated and prolonged; and 5) whether the officers utilized physical punishment, such as the deprivation of food or sleep. *Ledbetter*, 35 F.3d at 1067.

After review of the interrogation (Government Ex. A), the Court finds Irvin waived his Miranda rights and made voluntary statements to Detective Meade. On December 10, 2014, Detective Meade read Irvin his *Miranda* rights and told Irvin that an attorney was inquiring about when Irvin would be arraigned. Detective Meade explicitly asked Irvin if he still wanted to waive his right to an attorney and speak with him and Irvin replied yes. Consequently, Irvin's right to counsel during questioning was not violated since he waived it.

The questions were not coercive and Irvin's statements were not involuntary. Irvin was informed of his constitutional rights. The Court viewed Irvin's interrogation and it does not appear that it was coercive. Irvin complained of sweats and stomach upset, but said he was okay and prepared to proceed. The interrogation lasted for about an hour, and Irvin did a great portion of the talking. He often gave a narrative. There is nothing to suggest that law enforcement used

any physical punishment prior to questioning Irvin. Detective Meade is the only law enforcement officer present in the room. He entered the room and gave Irvin a cup of water. Some of the questions were open ended and rather straight forward. Detective Meade asked about the various guns found in the homes on Ohio Street and Irvin told him they belonged to a house mate. When asked who was the owner of the drugs found in the house, Irvin replied that it belonged to everyone and it was for recreational use. There is no evidence that Detective "repeatedly interrupted" Irvin or advised Irvin that he "could not help Defendant unless he told the 'truth' that the interrogator was looking for." Irvin's interrogation was not coercive and his statements will not be suppressed.

    **C.    Defendant's Motion for Revocation of Detention Order**

On May 21, 2015 the Court held a hearing regarding Irvin's motion for revocation of detention order. **[Docket No. 15, filed April 8, 2015]**. For the reasons stated on the record, the Irvin's motion is denied.

**IV.    CONCLUSION**

Defendant's Motions to Suppress Evidence **[Docket No. 11, filed April 8, 2015]**, to Suppress Statements by Defendant **[Docket No. 14, filed April 8, 2015]**,

and for Revocation of Detention Order are **DENIED**.

    **IT IS SO ORDERED.**

                      S/Denise Page Hood
                      Denise Page Hood
                      United States District Judge

Dated: November 17, 2015

I hereby certify that a copy of the foregoing document was served upon counsel of record on November 17, 2015, by electronic and/or ordinary mail.

                      S/LaShawn R. Saulsberry
                      Case Manager